**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **KEVIN KYTTLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 7:10cv00138** |
| **v.** | ) |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Kevin Kyttle ("Kyttle") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). Kyttle argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to give controlling weight to the opinion of his treating physician, Dr. Jan Pijanowski. Having carefully reviewed the administrative record and considered the arguments of counsel, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**, the Commissioner's Motion for Summary Judgment (Dkt. #12) is **GRANTED**, and Kyttle's Motion for Summary Judgment (Dkt. #10) is **DENIED**.

## I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the

factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).

This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Kyttle was born in 1958, completed the eleventh grade and obtained a GED. (Administrative Record, hereinafter "R." at 31.) He previously worked as a medical transport driver, a convenience and grocery store clerk, and a sales representative. (R. 31, 29, 121, 126.) Kyttle filed an application for benefits on June 5, 2006, claiming disability as of February 1, 2006 based on hepatitis C and diabetes. (R. 14, 120.) Kyttle's application for benefits was

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

rejected by the Commissioner initially based on a medical records review by Dr. Michael

Hartman (physical) on July 14, 2006. (R. 205-10.) This decision was confirmed on

reconsideration based on a medical records review by Dr. Thomas Phillips (physical) on January

25, 2007. (R. 212-17.) An administrative hearing was held on September 27, 2007 before an

ALJ. (R. 26-51.)

In a decision issued on October 19, 2007, the ALJ found that Kyttle had severe

impairments consisting of diabetes mellitus, hepatitis C, and obesity. (R. 16.) Considering these

impairments, the ALJ found that Kyttle retained the RFC to perform light work, except that due

to his impairments, he can only occasionally climb stairs and ramps, cannot work around

hazardous machinery or unprotected heights, and cannot climb ladders, ropes and scaffolds. (R.

17.) The ALJ further found that Kyttle must avoid concentrated exposure to extremely cold or

hot temperatures, excess humidity, pollution and irritants. (R. 17.) Based on this RFC, the ALJ

determined that Kyttle can perform his past relevant work as a cashier and sales attendant. (R.

20.) Accordingly, the ALJ concluded that Kyttle is not disabled under the Act. (R. 21.) The

Appeals Council denied Kyttle's request for review on January 29, 2010 and this appeal

followed. (R. 1-3.)

### III

Plaintiff's sole argument on appeal is that the ALJ failed to give appropriate weight to the

opinion of his primary care physician, Dr. Jan Pijanowski. On August 9, 2007, Dr. Pijanowski

filled out a Medical Assessment of Ability to Do Work-Related Activities (Physical). (R. 221-

22.) Dr. Pijanowski opined that Kyttle could lift and carry 10 pounds occasionally, stand and/or

walk a total of four hours, and sit a total of four hours in an eight hour day. (R. 221.) Dr.

Pijanowski further stated that Kyttle could never climb, stoop, kneel, balance, crouch or crawl,[2] and that he had environmental restrictions in terms of heights, moving machinery, temperature extremes, chemicals, noise, fumes, humidity and vibration.  (R. 222.)  At the administrative hearing, the vocational expert testified that these limitations would preclude Kyttle's past relevant work and abolish any potential occupational base, as even sedentary work requires occasional stooping.  (R. 50.)

A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SSR") 96-2p.

In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist.  20 C.F.R. §§ 404.1527(d), 416.927(d).  A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion.  Mastro, 270 F.3d at

---

[2]  Dr. Pijanowski also stated Kyttle's ability to push and pull is affected by his impairments, but did not explain how. (R. 222.)

178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

In this case, the ALJ considered Dr. Pijanowski's opinion that Kyttle can perform less than a full range of sedentary work, and she gave that opinion some – but not controlling – weight. Given the short duration of Dr. Pijanowski's treatment and the lack of objective findings in his treatment notes, substantial evidence supports the ALJ's opinion in this regard.

The administrative record contains only four treatment notes from Dr. Pijanowski, beginning on February 19, 2007.[3] These notes document Kyttle's diagnoses of diabetes mellitus and hepatitis C and also show that Kyttle was suffering from a scrotal infection, for which he was prescribed antibiotics. (R. 234.) At a follow-up appointment on March 21, 2007, records reflect a normal examination, except for suprapubic pain and a testicular mass. (R. 232.) Records from a May 11, 2007 visit were also unremarkable, save for the testicular mass. (R. 230.) The final treatment notes from Dr. Pijanowski, dated July 18, 2007, reflect no abnormal findings upon examination but note "fatigue" along with his other diagnoses. (R. 228.)

These few treatment notes from Dr. Pijanowski document routine treatment and confirm Kyttle's diagnoses of hepatitis C, hypertension, diabetes and obesity, but provide no objective findings whatsoever to support the functional limitations set forth on the August 9, 2007 Medical Assessment of Ability to Do Work-Related Activities (Physical). Kyttle testified at the administrative hearing that Dr. Pijanowski diagnosed him with diabetic neuropathy (R. 33), but that is not reflected in the treatment notes. Kyttle also testified that Dr. Pijanowski instructed him to elevate his legs to relieve swelling (R. 37-38) and not to overexert himself (R. 43), but

---

[3] Plaintiff asserts that Dr. Pijanowski was his treating physician from February 19, 2007 through August 19, 2007. (Pl.'s Br. 3.) These dates correspond to treatment records from Kuumba Community Health and Wellness Center and New Horizons Health Care and are documented in the administrative record at Exhibit 9F.

again, no mention is made of this in the treatment notes.  Indeed, there is no indication that Dr. Pijanowski placed any restrictions on Kyttle's activities.

On the August 9, 2007 Medical Assessment, Dr. Pijanowski was asked to state the medical findings that support his opinion that Kyttle can only stand and/or walk 4 hours per day. Dr. Pijanowski restated Kyttle's diagnoses – diabetes mellitus, hepatitis C and obesity – but did not outline any specific objective findings.  (R. 401.)  Elsewhere on the form, Dr. Pijanowski referenced Kyttle's "constant fatigue."  (R. 402.)  But even if fatigue does limit Kyttle's ability to walk, sit and stand, it does not necessarily explain Kyttle's inability to stoop, balance, kneel, crouch, or push/pull.  (R. 402.)  Dr. Pijanowski points to no objective, medical findings that explain these limitations.

The other two Medical Source Statements of Ability to Do Work-Related Activities (Physical) contained in the record provide little support for Dr. Pijanowski's RFC determination. Both of the statements were filled out by George Wagner, M.D., and were submitted to the Appeals Council and incorporated into the record.  On the first form dated January 2, 2008, Dr. Wagner stated at the top, "I did not do objective testing.  Answers per patient."  (R. 397.)  It is notable that this form, which is based on Kyttle's subjective account of his limitations, states that Kyttle can lift and carry 15 pounds occasionally (R. 397) – more weight than set forth in Dr. Pijanowski's RFC assessment.  Also contrary to Dr. Pijanowski's findings, Kyttle represented to Dr. Wagner that his abilities to reach, handle, push and pull are not affected by his limitations, and that he is able to climb, stoop, kneel, balance, crouch and crawl, but in so doing, he "will fatigue."  (R.398.)  The form also states Kyttle can stand/walk only 2 hours in an eight hour workday because he gets fatigued, and that his sitting is affected by his impairments but does not explain to what extent.  (R. 397.)

Dr. Wagner filled out a second Statement of Ability to Do Work-Related Activities (Physical) a few months later, on March 7, 2008. On this form, he noted that Kyttle can lift and carry 10 pounds occasionally, stand/walk 4 hours in an eight hour workday, and sit 3 hours or more in an eight hour workday. (R. 403.) Dr. Wagner specifically stated that Kyttle "can sit without too much problem." (R. 403.) Dr. Wagner's opinions as to Kyttle's postural activities, physical functions, and environmental restrictions echo those set forth in Dr. Pijanowski's report. There is no indication that this form is based on Kyttle's subjective report; thus, one can assume Dr. Wagner's second form reflects his opinion as to Kyttle's physical limitations. But the record does not explain who Dr. Wagner is, when he treated Kyttle, and for what impairments. There do not appear to be any treatment notes from Dr. Wagner in the record, and thus, there is nothing to support the limitations set forth in his RFC assessment. As such, these forms from Dr. Wagner cannot lend weight to Dr. Pijanowski's opinion as to Kyttle's functional limitations.

The administrative record as a whole reflects routine, conservative treatment and does not support the degree of limitation set forth by Dr. Pijanowski or claimed by Kyttle. The majority of the records date well before Kyttle's alleged onset of disability, February 1, 2006. Many of those records indicate that Kyttle was feeling well. (R. 347, 349, 386, 395.) In 2002, he was diagnosed with both diabetes mellitus and hepatitis C. At times, Kyttle's diabetes was noted to be poorly controlled, but on at least one occasion, Kyttle reported he had "cheated a couple of times over the month." (R. 301; see also R. 313.) A number of medical records indicate Kyttle's doctors stressed the importance of weight loss and maintaining a strict diet to regulate his diabetes and the effect it has on his liver. (R. 249, 276, 289, 301, 324, 326, 344, 349, 395.) He was treated with medication and does not appear to have needed insulin therapy. There is some reference in the medical records from April, 2003 to early diabetic neuropathy and bilateral pedal

edema. (R. 300-01, 343, 344.) He was prescribed Neurontin for the pain and compression stockings and hydrochlorothiazide for the edema. (R. 301.) By June, 2003, however, Kyttle denied signs or symptoms of neuropathy and stated he was generally doing well. (R. 313.)

With respect to Kyttle's hepatitis C, he had some difficulty with rage episodes while on interferon treatment in 2004, which appeared to resolve somewhat with a prescription for Zoloft and later Lexapro. (R. 359, 362, 265, 368, 374, 386.) Generally, however, notes reveal he tolerated treatment well. (R. 368, 374, 381.) Three months into therapy, in September, 2003, Kyttle reported he was doing well and had minimal side effects. (R. 327.) Treatment was discontinued after he was diagnosed with appendicitis and had surgery in September, 2003. In November, 2003, Kyttle stated that he did not wish to resume treatment, despite the fact that doctors recommended it. (R. 349.) After he continued to test positive for the hepatitis C virus, Kyttle elected to resume therapy beginning in January, 2004. (R. 357.) He experienced some rage episodes, and by June, 2004, he had discontinued the interferon treatment. (R. 386.) He stated he was aware of the risk that the virus might return but was feeling quite well off the medication. (R. 386.)

Records from September, 2004 show that Kyttle was feeling well and was not experiencing hepatitis C symptoms. (R. 395.) In January, 2006, Kyttle presented to the emergency room with complaints of lower flank pain and hematuria. (R. 167.) He was diagnosed with splenomegaly and noted to have low platelet count. (R. 170.) Subsequent testing was unremarkable. (R. 198.) By March, both the hematuria and flank pain had subsided. (R. 179, 181.) However, Kyttle began complaining of fatigue and diarrhea, the latter of which he attributed to his diabetes medication. (R. 179.) In April, 2006, he continued to complain of diarrhea and joint pain. (R. 178.) Kyttle underwent a colonoscopy in June, 2006, and had two

incidental polyps removed; otherwise, the exam was normal. (R. 174, 203.) Biopsies of the polyps showed no signs of acute colitis as well as a few extra inflammatory cells, but not enough to be diagnostic. (R. 173.) It was recommended that Kyttle use an over the counter medication such as Pepto-Bismal to control his symptoms. (R. 173.) Kyttle testified at the administrative hearing that he was not taking any medication to treat his hepatitis C. (R. 33.)

In a thorough and well-supported opinion, the ALJ "gave Dr. Pijanowski's assessment some, but not controlling, weight because he has only treated Mr. Kyttle for eight months and because his treatment notes do not reflect objective medical findings to fully support the degree of functional limitations suggested." (R. 20.) This decision is supported by substantial evidence. The ALJ specifically took into account Kyttle's diabetes, hepatitis C and obesity in finding he can perform a limited range of light work and can only occasionally climb stairs and ramps; cannot work around hazardous machinery or unprotected heights; cannot climb ladders, ropes or scaffolds; and is limited to work that allows him to avoid concentrated exposure to extremely cold or hot temperatures, excess humidity, pollution and irritants. (R. 17.) Notably, this RFC determination is more restrictive that those set forth by the reviewing state agency physicians, who found that Kyttle could perform medium work with no other postural or physical limitations, other than avoiding concentrated exposure to hazards. (R. 205-10, 212-17.) There is simply no support in the record for the additional limitations imposed by Dr. Pijanowski. Kyttle's treatment has been routine and conservative. He is able to prepare his own meals, do laundry and dishes, clean house, take care of pets, and drive. (R. 34, 135.) There is sufficient evidence in the record to find that Kyttle is not disabled, and thus a consultative examination was not required. 20 C.F.R. § 404.1519a(b) ("A consultative examination may be purchased when

the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."). For these reasons, the Commissioner's decision is **AFFIRMED**.

V

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Kyttle is free from all infirmity. Careful review of the medical records compels the conclusion that Kyttle has not met his burden of establishing that he is totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Kyttle's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. For these reasons the Commissioner's Motion for Summary Judgment (Dkt. #12) is **GRANTED**, and Kyttle's Motion for Summary Judgment (Dkt. #10) is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: June 29, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge